RAINEY *et al.* v. RAINEY *et al.*

[87 South. 128, No. 20575.]

1. WILLS. *Legacy abated when property available for payment was used in paying debts.*

General pecuniary legacies not made a charge on specific property must wholly abate when the property out of which they would otherwise be paid has been consumed in the payment of the testator's debts.

2. WILLS.· *Legacy and devise to one dying before testator lapsed and land descended to heirs.*

   A pecuniary legacy and a devise of land to a person who dies during the life of the testator lapses, and the land devised, if not otherwise disposed of by the will, descends to the testator's heir at law subject to the right of the testator's creditors to subject it to the payment of his debts.

3. EXECUTORS AND ADMINISTRATORS. *Debts not probated must be paid from property set apart for their payment.*

   Where specific property is set apart in a will for the payment of testator's debts, a trust therein for payment of the debts is thereby created, and they must be paid although they may not have been probated as required by section 2106, Code of 1906, section 1774, Hemingway's Code.

4. WILLS. *Widow accepting devise made subject to payment of debts must pay them though she might have renounced.*

   Where a devisee· in a will is directed therein by the testator to pay his debts, he becomes obligated so to do by accepting the devise, although the devisee is the testator's widow, who by renouncing the will under section 5086, Code of 1906, section 3374, Hemingway's Code, would thereby have become entitled to her distributive share of the estate as an heir at law, and also relieved herself thereby of any personal obligation to pay the testator's debts.

APPEAL from chancery court of Coahoma county.

HON. JOE MAY, Chancellor.

Suit by Mrs. Emma Rainey and others against Isom W. Rainey and others for construction of a will. From the decree, plaintiffs appeal. Affirmed.

*Green & Green,* for appellant.

The court interpreted the will on this evidence thus:· 1. That the general pecuniary legacies to Wilbur Howard Rainey for five hundred dollars and to Abner Rainey for five hundred dollars and to S. K. Rainey for five hundred dollars have lapsed, because of the deficiency of personal property and assets to pay the same and that the said

legacies are not a charge upon the lands, or upon any lands of the said testator. Of this finding, as far as it goes, we do not complain, but there was error in not declaring the general pecuniary legacy of five hundred dollars to Mrs. Walters lapsed for the same reason. 2. That the bequest and devise to W. A. Rainey both lapsed because of his death before the testator.

Of this we do not complain. But the court should have held that this devise descended to appellant, as testator's sole heir at law, he having died intestate as to this land. If the general pecuniary legacy of one hundred dollars was valid and had not lapsed, appellant would inherit that, also, as he died intestate as to that, also.

3. The court erred in holding that the sixteenth section bequeathed to Mrs. Walters, this a leasehold for thirty to thirty-five years, is not chargeable with any of the debts of the testator but that all of the debts of the said testator should be paid out of the funds and from the sources provided for the payment thereof, by the terms of the will of the testator. (a) This leasehold is personalty and passes to the administrator as personalty for the payment of debts. *Dillingham* v. *Jenkins,* 7 S. & M. 479; *Faler* v. *McRae,* 56 Miss. 227, and as long as there is a valid debt against the estate, the heir or distributee cannot acquire any title to such chattel as against the creditors of the decedent. *Id.*

(b) The personalty having been exhausted, this specific legacy of this sixteenth section personalty, is first appropriable to the debts, before the specific devises of lands could be applied to debts. This rule was denied effect by the decree.

(c) This specific legacy of the 16th section was encumbered by a mortgage to Irwin Leatherman Cotton Company and this debt was not probated against the estate. The failure to probate the mortgage debt under the express provisions of Hemingway's Code, section 1779, barred the debt from payment out of the assets, and confined its satisfaction to the property embraced in the mortgage.

*Trawick* v. *Hayler,* 75 So. (Ala.) 153; *In re Huntoons Est.,* 163 Pac. (Calif.) 52; *Schmidt* v. *Genzow,* 156 N. W. (Wis.) 143.

(d)  Under this rule, there being still a part of this mortgage debt unsatisfied by the personalty contained in the mortgage, this mortgage creditor could resort to the mortgage property to satisfy the same, and the surplus realized at the sale, or the remainder unsold, would be assets for the payment of probated debts.·

(e)  Where a devise or legacy is made of encumbered property, real or personal, the devisee or legatee takes, *cum onere. Gordon* v. *James,* 86 Miss. 721, 756-7, especially is this true under section 1779, Hemingway's Code, as to an unprobated mortgage debt, for it expressly bars satisfaction out of the general assets.

(f)  Even if the debt is charged on the land devised, such debt does not become the personal debt of the devisee.  *Clayton* v. *Boyce,* 62 Miss. 390.

4.  The court erred in decreeing that the unprobated debt, secured by mortgage on the lands devised to appellant, and I. W. Rainey and H. C. Rainey were just and legal claims and debts upon the estate, without distinction or discrimination, to the end that all of the debts of the said testator should be paid in full as directed by the terms of the will."

(a)  As stated, *supra,* par. 3, (c) the unprobated debt, secured by mortgage, cannot be satisfied out of the general assets, and is not a personal charge upon appellant. Hemingway's Code, sec. 1779, cases, *supra,* par. 3 (c-, (d).

(b)  This Greer mortgage covered the one hundred acres devised to appellant and also the one hundred sixty-three acres, in the same tract, devised to Isom W. Rainey and H. C. Rainey and appellant was entitled to discharge the mortgage, so far as her devise was concerned, by paying one hundred two hundred sixty-thirds of the mortgage debt, and Isom W. Rainey to pay eighty-one and one-half two hundred sixty-thirds and H. C. Rainey eighty-one and one-half two hundred sixty-thirds.

5. The court erred in decreeing that the policies of insurance payable to appellant for ten thousand dollars and those payable to Isom W. Rainey for five hundred dollars and to H. C. Rainey for one thousand dollars were chargeable with the payment of debts as far as necessary to supplement the general assets of the estate to pay the debts in full, and after exhausting the town lots, personal property insurance policy on testator's life, that the just and legal claims against the estate be paid out of said insurance policies payable to the wife, appellant, and to Isom W. Rainey and to H. C. Rainey in the ratio of one hundred one hundred fifteenths per cent. by appellant, ten one hundred fifteenths per cent. by H. C. Rainey and five one hundred fifteenths per cent. by Isom W. Rainey, and decreeing that such ratio be a lien on the lands devised to each of them.

The decree thus holds that these insurance policies, payable to the wife and the two nephews, should be charged with all of the debts, those probated and the Greer mortgage debt, unprobated, in preference to the specific devises of the land to appellant, his widow and I. W. and H. C. Rainey.

This construction required the widow to pay the debts out of her own property, her insurance policy of ten thousand dollars and the nephews out of their property, insurance policies of one thousand dollars and five hundred dollars, the whole debts before resort is had to the testator's own property bequeathed and devised to others. Nearly the whole burden of the payment of the debts, would thus fall on the widow out of her own insurance of ten thousand dollars, the other policies being only for one thousand dollars and five hundred dollars, or one thousand five hundred dollars. This policy payable to appellant was her individual property and could not be disposed of by her husband by deed or will. *Jackson Bank* v. *Williams,* 77 Miss. 398.

The intent to devote the wife's insurance to the payment of his debts could not be presumed. The natural

sequence and terms of the will would not express or imply such an intention of the testator. The will starts out with saying: "After the payment of my debts, the following devises and bequests are made." The statute says that all of the personalty of the testator is first applicable to debts, then the realty. *Gordon* v. *James,* 86 Miss.., *supra,* holds that this statutory rule controls, and that first, general pecuniary legacies will abate; second, specific legacies will abate and be applied to debts; third, that, then, specific devises may be applied to probated debts.

The will meant that after the payment of debts, the several general pecuniary legacies, the specific legacies, and the specific devises, should vest in the beneficiaries but subject to the payment of probated debts in the inverse order just named.

Thus all the testator's property is made subject to the payment of his debts and no legatee or devisee can take title until these debts are paid. There is no expression in the will that changes this devotion of his property to the payment of his debts. Then by the will, and under the statute, the payment of his debts out of his own property is provided for, he then provides for the payment of the balance, i. e., those unpaid by his own property of his debts out of his wife's policies, apparently believing that he could by will dispose of her policies. This is a residuary clause as to debts, and proceeds upon the idea that all of the previous legacies and devises had been exhausted.

It would take a clear expression to make one believe that the testator would only give his wife, out of all of his estate, one hundred acres of land out of a two hundred sixty-three acre tract; that he would give his brother a devise and legacy, his nephew a devise and his niece a specific general legacy and to his brother a general legacy and then when his estate was heavily in debt, provide that his wife's insurance policy of ten thousand dollars should be applied to the payment of his debts in preference to his own property. The scheme of the statutes, so properly emphasized in this case, controls.

(b)    There being no trust for the payment of the debts,
the language of the will for the payment of debts, is that
the town lots, personal property and life insurance policy
of five thousand dollars shall be devoted to the payment
of the debt.

In addition it provides as a residuary clause, that, shall
there remain any debts unpaid, that his wife, and nephews,
must pay the said balances out of their policies on my
life in their favor, each paying their *pro rata* part out of
the amount of insurance that they get.    Construing the
will under the rules of *Gordon* v. *James,* 86 Miss., *supra,*
and giving the statutes proper application, the proper in-
terpretation, as to payment of debts, would be:

First.    That the town lots, personal property and five
thousand dollar policy should be applied to debts pro-
bated.    Then, Second.    That the lapsed general legacy and
devise to W. A. Rainey be abated, and applied to probate
debts;    Third.    That the general pecuniary legacies be
abated and applied to probated debts.    Fourth.    That the
specific bequest to Mrs. Walters of the sixteenth section
after paying the balance on the Irwin Leatherman mort-
gage, be next abated and applied to the probated debts.
Fifth.    That the specific devises of the lands to appellants
and to Isom W. Rainey and H. C. Rainey after paying
their *pro rata* parts of the Greer mortgage, be next abated,
and applied to probated debts.

The policies of insurance of appellant and I. W. and
H. C. Rainey are not applicable to the payment of debts
especially not to unprobated debts, as shown, *supra.*

Election.    We understand that the doctrine of election
was pressed in the court below, but it has no application.
Appellant, the widow, was the sole heir of the testator.
If the provision by the devise of the hundred acres had
not been made to her, or if such devise were invalid, she
would have inherited as sole heir at law.

In 40 Cyc., page 1971, it is said:    "Where widow the
sole heir of Beneficiary.    No election is necessary where
the widow is the sole heir of the decedent."    Citing *Wall*

v. *Dickens,* 66 Miss. 655, which expressly holds that where the widow has a dower interest under the statute, the doctrine of election does not apply.

She cannot be compelled to elect between the surrender of her own property, the insurance policies, and the devise of the hundred acres which, if she did not elect, would pass to her as the sole heir at law. Stress was laid, as we are informed, on *Barrier* v. *Kelly,* 82 Miss. 233, in the court below; but that case has no application, and if it had, its doctrine would support the contention of appellant.

In *Peters* v. *Bane,* 133 U. S. 395, 33 L. Ed. 696, quoted in *Barrier* v. *Kelly,* the doctrine of election there means where too inconsistent or alternative rights or claims are presented to the choice of a party by a person that manifests the clear intention that he should not enjoy both, then he must accept one and reject the other; and so, in other words that one cannot elect a benefit under an instrument, and then repudiate it.

In the first place, there is no clear intention that appellant should not enjoy this devise, and there is no clear expression that she must elect between the payment of the debts by her insurance policy and the devise of the hundred acres. There is no provision of the will that the devise of the hundred acres—all that the wife gets of mortgaged land, was to be taken as compensation for the charge upon her policy. Her policy is made to stand as a relief from debts after the terms of the statute have been complied with, viz.: that all of the property of the testator should be first applied to the payment of debts, and it was only after all of the specific devises and legacies had been absorbed in the payment of debts, under the rule of the statutes as set forth in *Gordon* v. *James, supra,* that there could exist any debts to be covered by the residuary clause touching the insurance policies.

Construing the will from its four corners, it is clear that the provision as to appellant's policy paying the debts was the concluding residuary clause, as it were, and, appar-

ently, under the belief that the testator could dispose of these policies because he had paid the premium thereon, he provided that after all of his property legally subjected to the payment of debts had been subjected, should there remain any debts unpaid he wanted them paid out of his wife's and nephews' policies. This satisfies the clear meaning of the will, and is the construction which should be adopted. In fact, the testator had no power to dispose of the wife's insurance policy, nor that of the nephews, as shown, *supra.*

The provision in the will for Mrs. Walters is a specific legacy of a sixteenth section which is personalty and it passes to the executors for creditors, and being personalty, the crops thereon were personalty, and were applicable to creditors' debts. *Dillingham* v. *Jenkins,* 7 S. & M. 479, *supra; Thaler* v. *McRea,* 56 Miss. 227, *supra.* Besides if it was realty, the crops of the year of the death are assets for the payment of debts. Hemingway's Code, sections 1721-22; *Gorgon* v. *James,* 86 Miss. 719.

*S: G. Salter,* for cross-appellant.

Under section 2111 of the Code of 1906, a lien creditor of an estate is required to probate his claim within one year as provided by section 2107. A failure to do this prohibits the lien creditor from participating in the general assets of the estate and specifically states a method by which he must collect his debt from the property pledged to secure his debt.

It is the contention of the cross-appellants that inasmuch as there is approximately nine thousand dollars in cash in the hands of the executors after they have paid all of the probated claims not contested, and enough reserved to pay all of the contested claims, then the executors of the will should be required to pay a legacy of five hundred dollars to each of the cross-appellants as provided by the terms of the will.

The learned chancellor, however, held that this money should be applied by the executors to the payment of the Greer debt, and if this amount was applied to the payment of the Greer debt, then there would be no funds in the hands of the executors but out of which they could pay the legacies of five hundred dollars each bequeathed to appellants.

We respectfully submit that the chancellor erred in the opinion and that the money now in the hands of the executors to the amount of fifteen hundred dollars, should be paid over to appellants, each to receive the sum of five hundred dollars as provided by the will of W. F. Rainey.

*T. W. Brame,* counsel for cross-appellant.

I do not conceive it necessary to make any extended argument on the facts and the law as developed on the trial of this case.  There is not any dodging of the question by either side as to the payment of these debts.  Under the will that is the first thing that has got to be done and under the law this is also true.

We have shown in the statement heretofore made that there is ample means that ought to be in the hands of the executors and the executrix as shown by their own testimony, and the other parts of the record after all of these debts, probated and unprobated, shall have been paid, and after the payment of the expenses of the administration of the estate, there ought to be ample means left in their hands to pay these legacies.  But if we are mistaken in our view of the facts declared on the trial of this cause let us see what the will provides.  The will provides that if there is not enough realized out of the estate of the testator, which we have shown ought to be over twenty-two thousand dollars then that these debts shall be paid out of the proceeds of the insurance policies, payable to the executrix and the two executors.  This amounts to eleven thousand five hundred dollars.  Now this does not provide that the expenses of administering the estate should be

taken out of these assets that were set apart to pay the debts, so when you take out the expenses of administering the estate it would still leave ample means to pay these legacies.

It is the duty of the court to carry out as far as possible the clear intention of the testator, and his scheme in drawing his will was to pay his debts first. The legacies come next to the payment of the debts. If there is not enough money to pay his debts and to pay the legacies, you must look elsewhere for funds to pay the expenses of administering the estate if all these funds have been used for the purpose of paying the debts and the legacies.

It is not worth while to quote authorities. These principles are too well known as being the law applicable to this case. Now on the other hand it can be well argued that these claims, especially this claim of Greer's which was not probated, should be paid by the legatees, Mrs. Rainey and Isom Rainey and Howard Rainey, because this Greer debt was secured on their lands and Greer unquestionably will foreclose his deed of trust on these lands if these legatees refuse to pay the amount which was due him on his secured debt. If he had any other debt the register of claims does not show that he even attempted to probate it.

We hardly think that this court would sustain the view of the learned chancellor below that there was no money out of which the executrix and the executors could be required to pay the one thousand five hundred dollar legacies bequeathed to Mrs. Walters, Abner Rainey and S. L. Rainey.

*Cutrer & Johnson,* for appellee.

It is conceded by all, that the town property is chargeable with the debts, as well as the five thousand dollar life insurance policy, and as stated before, we contend, that the word personal property includes the sixteenth section property which was devised to Mrs. Walters.

We further contend, however, that inasmuch as the property just described was not sufficient to pay the debts of the deceased, that the life insurance policies payable to Emma L. Rainey, Isom W. Rainey and Howard C. Rainey, should be next chargeable with the debts. Our first inquiry in this connection is, what was the intention of the testator? We submit that it is perfectly manifest from the will, that it was his intention that these life insurance policies should be chargeable with his debts in case the present situation should arise. We do not think there is any possibility of rebutting this statement.

It is insisted, however, that the policies were not the property of the testator, and that, therefore, he could not operate upon the beneficiaries thereunder rights thereto. We rely in this connection upon the case of *Barrier* v. *Kelly,* 82 Miss. 233, where all the authorities are collated and commented upon.

This is a case peculiarly applicable to the doctrine of election. We are not advised that the doctrine of election has no application when the testator devises property not his own. We submit that the case of *Barrier* v. *Kelly,* is entirely decisive upon this proposition, where it is said, quoting Pomeroy's Equity Jurisprudence: "When a testator devises an estate belonging to A, to some third person, and at the same time bestows a portion of his own property upon A, he undoubtedly must rely upon the benefits thus conferred upon A, as an inducement to a ratification by A of the whole disposition. To give A the property which the testator was able to dispose of, and at the same time to allow him to claim his own estate, which had been devised to the third person, by his own paramount title, would be to frustrate the evident intention of the testator."

What have we in this case? The testator disposed of certain property to Mrs. Emma W. Rainey, and the appellees on behalf of whom this brief is written, and he further provided that his debts should be paid out of the property belonging to these devisees. We submit that to

allow the devisees to retain the property devised to them, and to frustrate the testator's intention by not paying his debts out of the life insurance policies, would be directly contrary to the principles of equity, and the case above cited.

That the property mentioned in the will as being chargeable with the testator's debts, and being a trust therefor, we submit the following cases from this court: *Abbay* v. *Hill, Fountaine & Co.,* 64 Miss. 340; *Gordon* v. *McDougall,* 84 Miss. 715; *O'Reilly* v. *McGuiggan,* 91 Miss. 498.

We come now to another proposition, and that is that the real property devised to W. A. Rainey, brother of the testator, is likewise chargeable with the debts of the testator, and does not descend to Mrs. Emma Rainey as the sole heir at law of the testator. It is contended by counsel for the appellant that the devise to said W. A. Rainey having lapsed by reason of his predeceasing the testator, descends to her because such is the law. This property was not dealt with by the testator; was not given to any of the objects of his bounty, and that in equity and under the law, it should be appropriated to the payment of his debts so as not to interfere with his expressed intention in his will.

"Where there is a will, the property not thereby devised descends to the heirs subject to all charges made thereon by the will. In such a case the decedent's estate is liable for his debts in the following order: (1) The general personal property; (2) property specifically and expressly devised to be sold; (3) descended property; (4) property specifically devised but charged generally with the payment of debts. The second and third rules exchange places, however, where the property set apart for the payment of debts is charged generally and not specially. Descended land is always liable before specific devises. It must pay all debts for which the real estate is liable. In exoneration of all but residuary legacies or of other lands specifically devised for the payment of debts, the order of liability of the several classes of property

comprising the total estate will not be disturbed unless the testator's intention to alter it plainly appears." 9 Ruling Case Law, 103, and cases cited.

As to the order in which the legacies and devises lapsed. we cite the case of *Gordon* v. *James,* 86 Miss. 719. Again, as expressive of the intention of the testator that his debts should be paid, he provided that no bequests should take effect "until after the payment of my debts."

The language of the will conveys indisputably the knowledge of the testator that his personal property was not sufficient to pay his debts so that the testator knew in advance that some of his real estate would have to be devoted to that purpose.

As to those claims which were required to be probated before any collection could be made upon them, the testator could be sure that the property devised to the appellant and these appellees, would be exonerated from the payment thereof, out of the means provided in the will for the payment, because if they were not probated, they would not and could not be a claim against or lien upon the land which he intended for his wife and his two nephews, who stood to him in the nature of sons. The record shows that the testator had no children, and that he had reared these two nephews in his home and had treated them as his sons, and remembered them in his will almost on equal terms with the remembrance of his last wife, the appellant. But as to claims against or liens upon the lands of the appellant and appellees, which were evidenced by a paper security in the way of a deed of trust or mortgage, the testator was helpless to protect the special objects of his bounty unless the method and manner in which he had disposed of his estate would provide that such claims should be paid regardless of whether or not they were probated within the time and in the manner fixed by law.

There was and is no way in the law either then or now, whereby a creditor having a lien on any property of a deceased, can be required to present his claim and have it

registered and probated. Such a creditor who sits supinely by and feels secure of his money can enforce collection no matter to what extent his non-action might tend to overturn the testamentary scheme of a decedent. As a matter of fact, the law itself operates so as to make it to the interest of such a secured creditor not to probate his claim if he has a good investment, because the statute provides that upon the probate of such a claim, and after six months from the grant of letter, it was made mandatory upon a creditor to accept payment of a tender by a personal representative. Code 1906, sections 2111-2112.

Under the peculiar circumstances of the case at bar the testator had unequivocally expressed his purpose and desire that all the just and legal claims upon his estate should be paid in full. He had provided a list of securities, to be exhausted in the order stated by him to effect that purpose. He had provided according to the necessary construction of his will that if any deficiency in funds should occur, the legacies to the other beneficiaries under the will should lapse, and that the money which would otherwise go to discharge them, must all be applied to the payment of debts, including money, from the sale of the leasehold interest in section sixteen, and that all this should be done to effectuate the paramount desire of the testator that appellant and these appellees should have their estates unencumbered. All this being true, it is an unreasonable construction of the will to contend that because the lien debt had not been probated, the executors could not pay it, but that the executors must take the fund which should be applied to the payment of this debt, and out of it pay the legacies which it was the intention of the testator should lapse upon the happening of a deficiency in funds. It is understood to be the unvaried rule, that the intention of a testator must control in the practical construction of his will.

Certain it is that if appellant had preferred the insurance to lands, she could have made the election to take the insurance instead of the land, but it is equally as cer-

tain also, that having made the election to take the lands, and being now and for years having been in possession and enjoyment of the lands, she cannot complain that the court will require her to comply with the condition only upon which she would be entitled to hold and own the land.

We submit that the action of the court below on the record as it now stands, was and is without error, except that the court should have held that the sixteenth section lands mentioned in the will should be and must be treated as personalty, and that a contribution from the insurance policies payable to appellant and these appellees, should not be directed until the application to the debts of the testator of the proceeds of this sixteenth section tract.

SMITH, C. J., delivered the opinion of the court.

This case was presented to the court below on petition by the executors of the will of Wilbur F. Rainey, deceased, praying for a construction of the will and for a determination of the rights of the legatees and devisees therein.

The will reads as follows:

"Know All Men by These Presents:

"That I, Wilbur F. Rainey of the county of Coahoma and state of Mississippi, being of sound and disposing mind and memory and in good health at the present time, fully realizing the uncertainty of life and the certainty of death, do hereby make and publish this my last will and testament and declare the same to be my only and true last will and testament hereby revoking all former wills made by me.

"First. Upon my decease I wish all the just and legal claims upon my estate paid in full.

"Second. After the payment of my debts, as above mentioned, I hereby make the following bequests:

"To my wife Emma L. Rainey I give one hundred acres of land off the west side of section 6, township 29, range 2 west, running north and south.

"To my nephews, I. W. Rainey and Howard C. Rainey, I give the balance of said section 6, township 29, range 2 west, except that land lying north of the public road and east of the property of the Rich Gin Company.

"To my brother W. A. Rainey I give that strip of land lying east of the property of the Rich Gin Company, and north of the public road and bordering on the Yazoo Pass and I further bequeath to him one thousand dollars in cash.

"To Mary Wilbur Howard, my niece, I give my land in section 16, township 29, range 2 west, being lots 3, 4 & 2, and I further bequeath her the sum of five hundred dollars in cash.

"To my brothers S. K. Rainey and Abner Rainey I give to each the sum of five hundred dollars in cash.

"All of the above-described real estate is situated in the county of Coahoma and the state of Mississippi.

"All of my town property and personal property and a five thousand dollar life insurance policy, I have made payable to my estate to be applied to my debts, and should there remain any debts unpaid my wife Emma L. Rainey, and my nephews I. W. Rainey and Howard C. Rainey must pay the said balance out of the policies of insurance on my life in their favor, each paying their *pro rata* part out of the amount of insurance that they get.

"I hereby appoint my wife Emma L. Rainey and my nephews I. W. Rainey and H. C. Rainey executors and executrix of this my last will and testament and request that they be allowed to qualify accordingly without bond being required of them in the premises."

It appears from the record that W. A. Rainey died during the life of the testator; that the property set apart by the testator for the payment of his debts, together with that devised to W. A. Rainey, deceased, has been sold and applied to the payment of the testator's debts, but that quite a large sum owed by him still remains unpaid, a part of which is secured by deeds of trust on the land devised in the will, and, though the fact is not clear, we will as-

sume that the debts secured by these deeds of trust have
not been probated.   The testator's widow is his sole heir
at law.   It appears that Mary Wilbur Howard has mar-
ried a man named Walters.

The court below decreed that the pecuniary legacies to
Wilbur Howard Rainey (which we presume is a clerical
error and that Mary Wilbur Howard Walters is meant),
and to Abner Rainey and S. K. Rainey, must wholly abate;
that both the legacy and devise to •W. A. Rainey had
elapsed; and that Emma L., Howard C., and Isom W.
Rainey must pay the balance due on the debts of the testa-
tor to the extent of the proceeds of the insurance policies
on the life of the testator payable to and collected by
them.

None of the general pecuniary legacies are made a
charge on the testator's property either real or personal,
and as the property that would have been otherwise sub-
ject to the payment thereof has been consumed in the pay-
ment of the testator's debts, all of these legacies must
wholly abate.

Both the legacy and devise to W. A. Rainey elapsed
because of his death having occurred prior to that of the
testator, and the land devised to him, therefore, vested
in the testator's widow, his sole heir at law, subject to
the right of the executors to sell it as provided by law
and apply the proceeds to the payment of the testator's
debts.

The will creates a trust for the payment of the testa-
tor's debts to the extent of the property specifically set
apart in the will for that purpose, consequently it was the
duty of the executors to pay all of the testator's debts to
the extent of the proceeds of such property, whether they
have been probated or not.   *Abbay* v. *Hill, Fontaine &
Co.,* 64 Miss. 340, 1 So. 484; *Gordon* v. *M'cDougall,* 84 Miss.
715, 37 So. 298; *O'Reilly* v. *McGuiggan,* 91 Miss. 498, 44
So. 986, 15 Ann. Cas. 623.   And, as the proceeds of such
property was insufficient to pay the testator's debts, it
was proper for the land devised to W. A. Rainey to be
sold for that purpose, and the money realized therefrom

should have been applied only to probated debts, that land not having been included in the trust for the payment of debts. But whether or not this was done does not appear, and we do not understand the point to be here material. Since the testator's widow and nephews have elected to take the land devised to them, they must carry out the testator's direction to pay out of the proceeds of the insurance policies payable to them any balance that may remain due on his debts, although such debts may not have been probated.

It is true that the testator's widow could have renounced the will and become entitled to her distributive share of the estate under the statute of descent and distribution, not to exceed one-half thereof, section 5086, Code of 1906, Hemingway's Code, section 3374, and, also, thereby have relieved herself of the burden of applying any part of the proceeds of the insurance policy payable to her to the payment of the testator's debts. But this she did not do. On the contrary, she elected to claim under the will, and, in order to do this, she must accept not only the benefits conferred, but, also, the burdens imposed thereby.

It is manifest from the provisions of the will that the testator intended that the bequests and devises of specific property should not be subject to the payment of his debts, unless the property set apart therefor, including the proceeds of the insurance policies, should be insufficient therefor.

The case of *Wall* v. *Dickens*, 66 Miss. 655, 6 So. 515, cited by counsel for Mrs. Rainey in support of their contention that the testator's widow did not assume the burden of paying his debts by accepting the devise to her, is not here in point, the question there before the court being the right of a widow, the sole heir of her husband who died partially intestate, to inherit land owned by her husband at the time of his death and not disposed of by his will, after accepting the property given her by the will.

*Affirmed.*