MARX *et al. v.* HALE *et al.*

[95 South. 441. No. 22792.]

1. WILLS. *Bequest to number of persons not individually named, but answering general description, is "gift to class" and not to individuals.*

A bequest or devise in a will to a number of persons not individually named, but all answering a general description, is a "gift to a class" and not to individuals.

2. WILLS. *Bequest to persons by name of exact amount to be taken by each is bequest to individuals and not to class; "gift to individuals."*

Where there is a devise or bequest to certain persons by name and the exact amount to be taken by each is specified, then this is a devise or bequest "to individuals" and not to a class.

3. WILLS. *Devise lapsed because of death of devisee descends as undisposed of property.*

Where real and personal property is specifically devised to individuals, and the devise does not take effect because of the death of the devisee during the lifetime of the testator, the property mentioned in this lapsed devise descends to the heir as property undisposed of by the will.

4. WILLS. *Widow of testator dying without children inherits all undisposed of property, including lapsed devises; widow of testator dying without children not precluded from inheriting undisposed of property because she takes life estate under the will.*

Where a testator dies leaving no children but leaving surviving him his widow, under our statute she is his sole heir and inherits all property undisposed of by the will, which includes lapsed devises. Though she has taken a life estate under the will in all the property, she is not precluded from inheriting property undisposed of by the will because of section 5088, Code of 1906, section 3376, Hemingway's Code.

APPEAL from chancery court of Tallahatchie county.
HON. G. E. WILLIAMS, Chancellor.

Suit by Mrs. Pearl Marx and others against C. H. Hale and others. From a decree for defendants, plaintiffs appeal. Reversed, and decree for plaintiffs.

*Woods & Kuykendall,* for appellants.

If the devises and legacies to Mrs. Symons and Mrs. Hopkins lapsed, and we can see no escape from the court holding that these devises and legacies did lapse, then Mrs. Symons' and Mrs. Hopkins' representatives certainly have no interest in or to the two one-sixth interests so devised, and the assertion of title under such claim is clearly a cloud as against the interest of the representative of C. Walker Neilson, therein, whether such interest is a one-sixth interest as heir at law of the widow, or a one-twelfth interest as of the surviving class, and under the bill as drawn the heirs at law of C. Walker Neilson are entitled to a decree removing such claim and cloud, regardless of the right of the heirs at law of Mrs. Moore, the other heir at law of the widow. In other words the demurrer should have been overruled as to those persons named as the heirs at law of C. Walker Neilson, whether overruled or sustained as to the heir at law of Mrs. Videau Moore. We say frankly that we regard the laws as announced by our supreme court to be that the estate on the lapse went to the heir at law of the testator, the widow, Mrs. Julia A. Neilson, and on her death to C. Walker Neilson and Mrs. Videau Moore, her heirs at law, but if the court disagrees with us and hold otherwise, then the lapsed devises went to the surviving members of the class named, i. e., Mrs. Little, Johnson, the Covingtons, and C. Walker Neilson (and the only one of said named parties represented by us is C. Walker Neilson), and none of these named parties are asserting any adverse claim to or cloud against the title of C. Walker Neilson in said lapsed interests. We are all agreed that under the prior decision of

the court, which is well reasoned, that the property of C. A. Neilson went one-sixth to C. Walker Neilson, Mrs. Little, J. W. Johnson, and the Covingtons, and our present dispute is as to the one-third interest, given one-sixth to Mrs. Hopkins and one-sixth to Mrs. Symonds, that is, after the life estate to the widow.

The court asks, referring to the quotation from the codicil: "Does not this provision supersede all the provisions in the original will except the life estate to the widow? And did not the whole estate at the death of the widow, except that devised to Johnson, go to the brothers and sisters living at the time of the death of the testator as a class under the doctrine of *Branton* v. *Buckley,* 54 So. 850?"

In the first place this court has already held that under the will the estate went to the wife of the testator for life, and this is in the face of the contention that the provision so quoted supersedes the will, and as to the brothers and sisters of the testator living at the time of his death; for there is no mention of an exception of the life estate given the wife made in the codicil. This codicil is simply an addition to the will to permit the "minor" Johnson, "living with" the testator to share in the disposition of his estate with those persons named in the will as the objects of the testator's bounty. And the codicil cannot be meant to supersede the will for its terms clearly show that the taking by Johnson is to be in accordance with the provisions made for said brothers and sisters in the will, and he cannot take except as provided for these persons in said will.

This codicil is simply an addition to the will whereby it is sought by the testator to place the "minor" "living with him" on equal footing with the persons to whom he had given the remainder by his last will, and whereby he admits him to the said will, to share according to the devises and bequests thereof, and not otherwise.

The expression used in the codicil: "I direct that said John W. Johnson take of my estate equally with my brothers and sisters," is qualified by the further expression showing the manner by which he had provided for those per-

sons by him, denominated as brothers and sisters in the will, i. e., Mrs. Hopkins, Mrs. Simons, Mrs. Little, Johnson and the Covingtons.

"He (Johnson) and they (the persons in said will named) are to have my estate," but this is then further qualified by the manner and the proportion in which "he and they" are to take, that is: "Share and share alike as provided in my last will and testament for my brothers and sisters." The court will notice that the word sister is omitted in the transcript just here but by reference to the exhibit in the original case (that before the court on the first appeal), it will be seen that the word "sisters" should here follow.

This makes it clear that the words "brothers and sisters" is meant to apply to niece, nephews and sisters, or to the named devises, for in the provision here named for Johnson it is expressly made in the light of the will and according to that provision already made. And the words "share and share alike," "equally," etc., instead of being used in the creation of a devise here to said brothers and sisters is simply a description of the manner in which Johnson is to take and a direct expression that he is to take with persons named in the will according to the name of the taking by said persons under the will. And is not in conflict or revocation of the devises of the will.

The testator in the will, as decided by this court in the first opinion in this case, gave to his wife a life estate, and by the same will provides that the remainder shall go to Mrs. Symons, Mrs. Hopkins, Annie Little, C. Walker Neilson and the Covingtons and then by the codicil he adds: "The said Johnson take of my estate equally with my brothers and sisters, that is to say, he and they are to have my estate, share and share alike as is provided in my last will for my brothers and sisters." Under the well recognized rule of law the provisions of the codicil will be construed as addition to the will rather than as revocation of the will, and the codicil will be presumed not to revoke any gift or cut down any devise of the will if such construction is

possible. Of course where there is absolute inconsistency between the will and the codicil the codicil revokes but as our supreme court in an opinion by Judge CAMPBELL in the case of *Vaughn* v. *Bunch,* 53 Miss. 318, says: ". . . . the codicil is a part of the will, and is to be read as such, and so construed as to make it harmonize if possible with the purpose declared in the will, . . . and as the codicil shows the purpose of the testator to alter the will in one particular there arises an implication that it was not intended to change it in any other particular."

In the instant case the body of the will, that is, the will proper, shows the clear intention of the testator to give the remainder to the named devisees and the codicil that the sole purpose of its addition is to admit Johnson to equal share with the named devisees, even though they may be misdescribed, so the necessary implication arises that it was not the intention of the testator to change the gifts made in the body of the will to the named devisees. "The general rule is that the 'codicil shall change the will so far only as the intent is manifest especially when in all other respects the will is in terms ratified and confirmed.' "*Pendergast* v. *Tibbetts,* 41 N. E. 294. "The rule is again stated in *Tilden* v. *Tilden,* 13 Gray, 103, in these words, 'A codicil duly executed is an addition or supplement to a will, and is no revocation thereof, except in the precise degree in which it is inconsistent therewith, added on to the precise degree of revocation.' " *Pendergast* v. *Tibbetts, supra.* And again in the case of *McGhee* v. *McGhee,* 74 Miss. 393. See note to 37 L. R. A. (Old Series) on page 571.

In order for the codicil to revoke the will or any of its devises the codicil must be absolutely inconsistent therewith. See Am. and E. Ency. of Law (6th Ed), page 184; 40 Cyc. 1180. It is therefore our contention that the codicil simply adds the name of Johnson to those of the persons named in the will and that he is to share equally with them the gift to them made in the will, i. e. the remainder, the life estate being vested in the widow at the death of the testator and the remainder except that two interests which had lapsed prior to the death of the testator, vesting in the

named devisees then living, and the two interests lapsing
going over either: first, as intestate property to the heir
at law, the widow, or, second, if the right was to a class
to the named devisees, then living, that is the surviving
members of the class, in which event; first, If the widow,
then to her heirs at law on her death, and the persons named
as heirs at law of C. Walker Neilson, one of the two heirs
at law of the widow, took an undivided one-half of said
lapsing devise, or a one-sixth share. Second. If to sur-
viving members of the class, that is Johnson, Mrs. Annie
Little, C. Walker Neilson and the Covingtons, then on the
death of the testator, C. Walker Neilson took a one-fourth
interest in said one-third lapsing interest or one-twelfth
of the whole and on his death the same went to his heirs
at law and these complainants are now owners of the same.

The writer was not present on the argument but under-
stands that some of the court asked as to the right of the
widow to take as heir at law of the testator the two lapsed
devises in view of the fact that she took the life estate and
as to the application of the statute, section 5088, Missis-
sippi Code of 1906, and to this we desire to call the atten-
tion of the court to the following from the case of *In re
Reed,* 82 Pa. St. 428: "His widow was therefore put to no
election between her legacy under the will and this undis-
posed of estate. It was not the intention of the testator or
of the law she should take her legacy in lieu of the estate
thus lapsed. He thought of no lapse and therefore made no
provision in lieu of the legacy. The lapse was from the
act of God, and the law of the land, which do injury to no
one. If the testator by reason of the lapse died intestate
of this portion, the intestate law must govern its distribu-
tion, and this being so what warrant was there for saying
the widow took nothing under the intestate law." We
again cite *Wall* v. *Dickson,* 66 Miss. 655; *Lemon* v. *Rogge,*
11 So. 470; *Magnuson* v. *Magnuson,* 64 N. E. 371. And
also: *DeSilver's Estate,* 142 Pa. St. 74, 21 Atl. 882; *In re
Thompson,* 229 Pa. St. 542, 29 Atl. 173; *State* v. *Holmes,*
115 Mich. 456, 73 N. W. 548; *Kaser* v. *Kaser,* 68 Ore, 153,
137 Pac. 187.

We could cite many other cases of the same holding but do not desire to weary the court, and especially so in view of the two Mississippi cases, directly in point.

*Wm. Baldwin,* for appellee.

It is submitted that the only question in this case is whether or no the devises to Mrs. Catherine C. Hopkins and Mrs. Annie F. Symons, named in the will of Charles A. Neilson, lapsed upon their respective deaths before the death of the testator, Charles A. Neilson. To claim that this question was passed upon even inferentially in the first opinion of the supreme court of Mississippi in this case is but to question the statement of this court, that the court did not mean in its opinion to pass at all upon that question. See opinion 113 Miss. 29, 73 So. 865.

The supreme court of Mississippi in construing this will of Charles A. Neilson held that by it was the devise to his widow, Mrs. Julia A. Neilson, of a life estate, and by implication a remainder to certain named devisees, that life estate to be in part forfeited by her marriage. But that by the will was given to her this life estate, remainder to named beneficiaries. The uncontroverted facts are that Mrs. Julia Neilson was the widow of Charles A. Neilson and his sole heir at law; that Charles A. Neilson died owning the lands in controversy, and if not disposed of by his will, descended to his widow, Julia A. Neilson; that appellees are the heirs at law of Julia A. Neilson; that two of the devisees of the will of Charles A. Neilson, to-wit: Mrs. Annie F. Symons and Mrs. Catherine C. Hopkins died many years before the testator Charles A. Neilson; that Charles A. Neilson executed his will in 1876 and died in 1907; that Julia A. Neilson died in 1913 leaving appellants as her heirs at law, or representatives of her heirs at law.

These facts are not denied and the question now sought to be presented by appropriate pleading is, what now are the rights of the heirs at law of Mrs. Julia A. Neilson in

this estate.  Both at the time of the execution of this will and at the death of the testator Charles A. Neilson, Mrs. Julia A. Neilson was his sole heir at law.  Code of 1871, sec. 1788; Acts 1876, page 194, sec. 55; Code of 1906, sec. 1651.

If there be any question settled by the law, it is that when a testator selects an object for his bounty, names the devisee and the exact portion of his estate that that named party is to receive, and that named beneficiary dies before the testator, that the gift in the will lapses and becomes part of his estate undisposed of by the will.  See text and page of authorities 40 Cyc. p. 1925, No. 2 and notes, 1st Underwood on Wills, sec. 336.  And the state of Mississippi, by the enactment of this statute and keeping it intact through the years, has but impliedly stated that in all other cases, the devise or legacy must lapse.

40 Cyc. p. 1937, subdivision 2, reads: "(11) Construction and Effect of Statutes—(a) Who are Children, Descendants, or Relatives of Testator.  Statutes preventing lapses in case of devises or bequests to children or other descendants apply only to heirs in the direct descending line, and not to collateral relations, and consequently will not prevent the lapsing of a legacy or devise to a brother, or nephew or niece of the testator in case the donee predeceases the testator."

It is very true that a will becomes operative and speaks only at the death of the testator, but when the question is before us as to the meaning or purpose of the testator, we must look at the mental picture spread before him at the time he discloses his intention or purpose and construe what he said with reference to what is before him when he discloses his purpose.  In this way only can we be fair to him. 40 Cyc., p. 1424b *et seq.* 28 Case Law, p. 234, sec. 196.

Third—The appellees present defensively three propositions.  These propositions will be dealt with under the heads following to-wit: Subdivision A, Subdivision B, Subdivision C.  Subdivision A:—That section 5099 of the

Code of 1906, cuts out any rights of appellants as heirs at law of Mrs. Julia A. Neilson, in the estate of her husband, testator Charles A. Neilson. Subdivision B:—That under the will of testator, C. A. Neilson, the devises to Mrs. Symons and Mrs. Hopkins did not lapse because they were devises to a class. Subdivision C:—That in some mysterious, not attempted to be explained way, somehow the heirs at law *per stirpes* of these devisees, took by implication what the will gave to the deceased devisees.

Subdivision A. As to section 5088 of Code of 1906. The court below did not consider this section in its decision, but the point was raised by counsel for appellees that it should have some effect. It is submitted that section 5099 of Code of 1906, has no bearing at all upon this case. It is not denied but that Mrs. Julia A. Neilson was the sole heir at law of deceased Charles A. Neilson.

Section 1651 of Code of 1906 reads: "1651 (1545). Descent of property as between husband and wife. If a husband die intestate, and do not leave children or descendants of children, his widow shall be entitled to his entire estate, real and personal, in fee simple, after payment of his debts; etc."

By section 1654 (1548). Estate of testator not disposed of by will to descend. All estate, real and personal, not devised or bequeathed in the last will and testament of any person, shall descend and be distributed in the same manner as the estate of an intestate; and the executor or administrator shall administer the same accordingly.

"If real estate be specifically devised, and the devise does not take effect, either from the incompetency of the devisee to take, from a partial revocation of the will, a lapse by the death of the devisee in the lifetime of the testator, or from the contingency not happening upon which, as a condition precedent, the devise was made, or was to take effect, it descends to the heir, as property undisposed of by the will." *Morris* v. *Henderson,* 37 Miss. 507.

So it is that, whatever property Charles A. Neilson died possessed of, that did not pass by his will, went under the statute to his heir at law, Mrs. Julia A. Neilson. The testator alone can disinherit the heir. 40 Cyc. p. 1498. "The only way to disinherit an heir is to give the property to some one else." *Tea* v. *Miller,* 101 N. E. 209; *Coffman* v. *Heathnole,* 2 L. R. A. (old series) ; Woerner, Law of Administration, sec. 418, p. 848.

The history and purpose of this section 5088 is clear in our law. It can be given in the words of this court. This court in *Wilson* v. *Cox,* 49 Miss. 544, and again in *Wall* v. *Dickens,* 66 Miss. 658, cites with approval 40 Cyc., p. 1971, p. 2; this court deals with the exact question here raised and holds that, where the widow is the sole heir (as she was to these two lapsed legacies) there was no call upon her to renounce and that the statute had nothing to apply to.

Section 5088. The will of a decedent shall be so construed as that any provision made for the wife in the will shall cut her off from any other part of the estate, although the testator died partially intestate, leaving his wife his sole heir, and the courts will, upon application, proceed to make a will for the decedent, directing where his estate undisposed of will go."

It is submitted that two recent cases decided by this court, to-wit: *Cain* v. *Barnwell,* 87 So. 481, in Division B, and *Cain* v. *Barnwell,* 87 So. 484, in Division A, are determinative of this question and clearly announce this proposition that the statutes of Mississippi, sections 5086, 5087, and 5088 of Code of 1906, have no reference to such property of the testator as to which he died intestate, because that went directly to the heir by statutes of descent.

As in the case at bar, it is claimed that because a life estate in certain property was given to the widow and she did not renounce the will that she is held by section 5088 of Code of 1906 to have elected to take only the life estate and has no rights in property (the lapsed devises) of her husband died intestate.

This court, Division A, holding in *Cain* v. *Barnwell,* 87 So. 481, quoting the syllabus as prepared in the Digest by supreme court judges, reads: "Where a husband of a testatrix did not possess a separate estate at the death of his wife who devised the homestead of both but made no separate provision for the husband, and there are no children nor descendants of such, the husband is entitled to an undivided one-half interest in the lands devised, and this right is not affected by the fact that the decedent was partially intestate and the lands not devised passed to the husband as sole heir are in value more than one-half the value of the entire estate."

This court, Division B, holding in *Cain* v. *Barnwell,* 87 So. 484, quoting syllabus, reads: "That part of this section which provides that the husband, upon renouncing the will, shall be entitled to only one-half of the real and personal estate of his wife, refers only to the property devised and bequeathed under the will, and in nowise limits the right of the husband as sole heir at law to inherit all of the property under the laws of descent and distribution not devised or bequeathed by the will."

It is, of course, not for one moment decided that under the law a devise "to a class" does not lapse, indeed it cannot lapse as long as any one member of the class survives. Because the devise is not to individuals at all but to a bunch, "a class," and of course no lapse as long as any of the class are alive. But the most common examination will show us that, if ever there was a devise, that was not in any sense a devise "to a class," it is the devises now before this court. What is a devise to "a class?" 40 Cyc., p. 1473.

As to what is a devise to "a class" so that there is no lapse, à clear statement of this is found in the recent case of *Matter of King,* New York Court of Appeals (200 N. Y. 189). This case, *Matter of King,* is reported 21 American and English Annotated Cases, page 412, *et seq.* The exact converse of this definition is well stated by Vice-Chancellor Kindersley in the English case of *Cruse* v. *Howell,* 4 Drew. 217: "If there is a bequest to certain persons *nominatim,* or

so described as to be fixed at the time of the gift so that there can be no fluctuation, then, if one of them dies in the lifetime of the testator, his share lapses." 21 Am. and Eng. Ann. Cases, p. 415. See note to this case 21 Am. and Eng. Ann. Cases, pages 415 to 418, inclusive.

The case of *Branton* v. *Buckley,* 99 Miss. 122, wherein this court defines a gift to a class as "a gift to a number of persons not individually named, but all answering a general description, is a gift to them as a class." No better general rule for the ascertainment of a class can be found than in the case of *Herzog* v. *Title Guaranty & Trust Company,* 67 L. R. A. 152.

Conceding, however, that these devises are "to a class" that cannot help appellee's position in this case at all. If considered devises "to a class," then the course of the descent is fixed clearly and unequivocally by the laws of Mississippi. If a devise to a class, then there is no descent of the lapsed devises, except to the survivors of the class. 40 Cyc., p. 1930; *Magnuson* v. *Magnuson,* 197 Ill. 496, 64 N. E. 371; *Jackson* v. *Roberts,* 14 Gray (Mass.) 546; *Crecelius* v. *Horst,* 9 Mo. App. 51 (affirmed in 78 Mo. 566.) ; See also *Martineau* v. *Simonson,* 59 N. Y. App. Div. 100, 69 N. Y. Suppl. 185; *Coley,* v. *Ballance,* 60 N. C. 634; *Strong* v. *Ready,* 9 Hump. (Tenn.) 168, overruling *Rhodes* v. *Holland,* 2 Yerg. (Tenn.) 341, *contra Lockhart* v. *Vandyke,* 97 Va. 356, 33 S. E. 613; *Hoke* v. *Hoke,* 12 W. Va. 427. The present West Virginia statute especially provides for lapse in such a case. Code of West Virginia, 1899, ch. 77, sec. 12."

So it results that, if it be that if the deceased testator's will be construed to be "to a class," this class must have consisted of those named in the will as constituting the class, that is "brothers and sisters." And if it be that the devise was not to Mrs. Annie F. Symons and to Mrs. Catherine C. Hopkins (as the will reads) but to "his brothers and sisters," then when one died, her share must have survived to the others; and when another died, then on to the others named. Such is the settled law, independent of our statute, section 2770 of Code of 1906. However, the

statute reads: "2770. (2441) Estates in common; how created. All conveyances or devises of land made to two or more persons, or to a husband and wife, shall be construed to create estates in common, and not in joint tenancy or entirety, unless it manifestly appears from the tenor of the instrument, that it was intended to create an estate in joint-tenancy or entirety with the right of survivorship; but this provision shall not apply to mortgages or devises, or conveyances made in trust." This statute necessarily changes that usual rule of law governing the descent in such cases. 40 Cyc., p. 1929; *Doran* v. *Beale,* 106 Miss. 318.

It is hence submitted that if it be conceded that these devises were "to a class" (which clearly they are not) that it still results that under the law of Mississippi, they are to be construed to create estates in common and being estates in common, lapsed upon the death of the respective tenants in common.

The law is plain of a devise to a party and with a view to prevent a lapse of the devise providing that certain other party or parties will take it by representation or substitution upon the death of the devisee before the testator. All that is necessary to have such devise over sustained by the courts is for the testator to declare his wishes. Thousands of such wills have been made and will continue to be made. The law books are full of such devises and the rules of law established beyond any controversy. 40 Cyc. p. 1933, et seq., subdivision 5. 1st Underwood on Wills, sec. 332; *State University's Appeal,* 97 Pa. St. 187. See also *Murray* v. *Yard,* 12 Phila. (Pa.) 441; *Sibley* v. *Cook,* 3 Atk. 572, 26 Eng. Reprint 1130; *Toplis* v. *Baker,* 2 Cox Ch. 118, 2 Rev. Rep. 21, 30 Eng. Reprint 55." See 1st Underwood on Wills, page 444, sections 331 and 332.

It is submitted that when a testator makes known his wishes in his will that the courts will respect them and carry them out. But the courts cannot be called upon to make a will for a deceased testator who has not seen fit to make his wishes known. One of the plainest statements of the law upon this subject is that of the court of appeals of New

York in *Herzog* v. *Title Co.,* 67 L. R. A. 1, 149; *Tilden* v. *Green,* 130 N. Y. 29, 51, 14 L. R. A. 33, 27 Am. St. Rep. 487, 28 N. E. 880.

Under the statutes of Mississippi, the estate of a deceased testator not disposed of by his will goes to his wife, and it is submitted that appellees will not be permitted to be held wiser than the law.

*C. H. Hale,* for appellees.

I shall first take up the question suggested by the court as to whether, conceding that the suggested construction that the effect of the will is a devise of that part not devised to Johnson, to the testator's brothers and sisters as a class, is a correct construction, this cause in its present shape, is not a moot case. To this I answer that in my opinion the case now before the court is not a moot case in any sense or under any construction of the will.

The case comes to the court on an allowance of an appeal by the chancellor after he had sustained a demurrer to the original bill. By the original bill, the complainants, asserting title in themselves to the shares of the estate of C. A. Neilson devised by the will to Mrs. Symons and Mrs. Hopkins, sought to cancel the claim to the same property made by the defendants, said to be heirs of those women, as clouds upon their, the complainants' title.

On the face of the bill, the defendants who demurred are alleged to claim a title to this land. By the demurrer, they admit that they do claim it, and their claim is necessarily a cloud upon the complainants' title, if the complainants have any title whatever, because the claim of the defendants extends to the whole and each part of the lands in controversy, that is, the shares devised to Mrs. Symons and Mrs. Hopkins. Looking at it from another angle, the complainants claim in their capacity as heirs of Mrs. Julia A. Neilson, all and every part of the said lands basing that

claim upon the proposition that the devise lapsed and passed to Mrs. Neilson as the heir at law.

The defendants, appellees here, could not, of course, choose the form in which the question was presented, but their claim is assailed by persons whom they conceive have no rights in the property; have no title thereto, to be clouded by the claim of the defendants. Before they should be forced to make any answer, they are entitled to the judgment of the court as a matter of law, on the question whether the complainants have any standing in court to object to that claim. This necessarily raises the question of whether the complainants have shown by the bill any title to the land; which point is sharply raised by the demurrer which challenges their title on their own showing. This applies to all parties in my judgment, for the reason that I think their bill and claim of title is based upon the relationship to the widow, Julia A. Neilson. As to Moore, this is the whole of his claim, and the demurrer might be sustained as to Moore even if overruled as to the Neilson appellants.

But this is not the whole of the claim of the appellants Neilson. They set out their pedigree, and the terms of the will. By the will, it appears that the ancestor of these particular appellants, Walker Neilson, was a nephew of the testator, C. A. Neilson, and was one of those named as remaindermen to the estate subject to the life estate of the widow. By the whole will, it becomes apparent that if there was a lapse, these Neilson appellants would become entitled to some part of the lapsed devises. When therefore, they made the claim that the assertion of title by the appellees was a cloud upon their title, it became essential that the question of lapse or no lapse should be decided in order to determine whether or not the claim of the appellees based on no lapse, was a cloud upon the title of the Neilson appellants. This is, of course, an additional and quite different question from the question raised by the assertion of title through Mrs. Julia A. Neilson, alone. A complete defense to the claim of title through Mrs. Julia A. Neilson

on the ground that she possessed no estate of inheritance, and is now dead, might be made, and it would completely dispose of Moore's claim, without completely disposing of the claim of the other appellants. But both questions, that is, the quality of the estate of Mrs. Julia A. Neilson and that of lapse or no lapse, are necessary to determine whether the complainant or the defendants have the title to the so called lapsed legacies. These questions may be determined on the face of this record without reference to the identity of "brothers and sisters" of the testator, and whether they outlived or predeceased the testator. It would have been more pleasing to the defendants if there had been, in the bill, a complete statement of the names and dates of death of the testator's brothers and sisters of the whole blood, and of the names of their heirs, but as before stated, these defendants cannot control the pleadings of their adversary, and the pleadings as written, do make a claim which the defendants conceive is without basis on the facts set out by the bill and exhibit, and the defendants are entitled to the judgment of the court whether that claim requires answer.

I now proceed to the substantial questions asked by the court and consider first, whether the second item of the codicil supersedes all the provisions in the original will except the life estate to the widow. My opinion coincides with that of counsel for the appellees to this extent; I do not think that this item of the codicil was meant to or does revoke or annul the devise in the main part of the will. I think that it adds Johnson as a legatee.

I think, further, that while this item of the codicil does not supersede, annul or revoke the clauses of the main will, it does throw a flood of light upon the testator's intention. I certainly need not call to the court's attention the hornbook law of wills that the intention of the testator is the pole star of the construction, and that when found, it, unless it violates some rule of law, is the law of the will. It is merely the application of that principle that I wish to urge upon the court.

131 Miss.—20

Proceeding now, to the light thrown upon the testator's intent by the codicil, I may first remark that the will and the codicil must be read together. They are parts of the same document legally speaking. They are tied together by reference, back in the codicil, to the will. Taken together, it is an indubitable conclusion that the testator used the words, in the codicil, "brothers and sisters" as synonymous with the words "my nephew, Walker Neilson, my niece, Annie Little, my nephews, William and Benjamine Covington, and my sisters, Annie F. Symons and Catherine C. Hopkins." In other words, he identified, in his own mind and by his own words, a nephew with a brother or a sister, a niece with a brother or a sister, and two nephews with a brother or a sister. Going on from the facts undoubtedly shown, to the inferences referred to, I think that the inference is irresistible that William and Benjamine Covington, to each of which two, exactly half as much was given as to Walker Neilson, were the sons of a deceased sister, Mrs. Covington, and I submit the inference to the court that the circumstances that the testator has devised a full share to each named sister, a full share to a named nephew, Walker Neilson, a full share to a named neice, Annie Little, and a half share to each of two nephews named Covington, shows that the testator was intending to devise his estate equally among his brothers and sisters, or the descendants of brothers and sisters, giving it to the descendants of brothers and sisters *per stirpes* and not *per capita.*

It is very clear from the whole will, that the objects of the testator's bounty, were after the widow had been provided for, the brothers and sisters of the whole blood, or those who stood in the relationship of descendants of those brothers and sisters. It is a disposition which contravenes no law that property should be left to named persons, or their descendants, and if it appears to be the testator's intent, that a named person or his or her descendants shall take, then that intention should be effectuated. The court has inquired whether the whole estate at the

death of the widow, except the share devised to Johnson, did not go to the brothers and sisters of the testator, as a class, and so result to those brothers and sisters who outlived the testator.

This may possibly be the correct construction, although I believe that the construction for which I have been contending, to-wit: an intent to substitute descendants of legatees for legatees is the correct one. But if correct, is correct only with this modification—that brothers and sisters shall be held to be nieces and nephews as named in the will. In other words, that the testators expression "brothers and sisters" means nothing more than the persons named in the main will who were not brothers and sisters. The testator means the same persons by both phrases. He can, in fact, mean nothing else because a devise in the codicil to brothers and sisters is tied to and simply explanatory of the devise in the will to sisters, niece and nephews. The same persons are meant. It is my contention, of course, that this merely adds force to my proposition that there was an attempt to substitute descendants for ancestors, but if the court should hold that this was not sufficient to save a lapse, then and in that event, the intention of the whole will made particularly clear by the devise in the codicil, is that the persons called in the will, sisters, niece and nephew, and called in the codicil brothers and sisters, take as a class, with the result that the lapsed devises go to the survivors of that class. This will utterly destroy Moore, and will result, on the facts stated in the bill, in a distribution of the shares of Mrs. Symons and Mrs. Hopkins, between Walker Neilson, Annie Little, William and Benjamine Covington and John W. Johnson. I very frankly concede, even if it is not shown in the bill as I think it is, that Walker Neilson outlived the testator, though he is shown to have been dead at the time the bill was filed.

May I call the court's attention to the wording of the second item in the codicil, which the court will see expresses the sense although changed to exclude matter im-

material to the exact point: "Johnson shall take of my estate, equally with my brothers and sisters, by which I mean that he and they are to have my estate share and share alike, as provided in my last will for my brothers and sisters."

This quotation does not purport to be exact. The exact words are before the court, but the meaning is that the brothers' and sisters' shares are to be determined by the provision of the will, which I contend, includes a provision that the shares of a deceased brother or sister, go to the descendants of that brother or sister, and that Johnson's share is to be determined in the same way.

SYKES, J., delivered the opinion of the court.

For the third time this case is here on appeal. We are now called upon to construe the will and codicil of Charles A. Neilson. This will and codicil are set out in full in the first appeal of this case. *Hale* v. *Neilson,* 112 Miss. 291, 72 So. 1011. The record here shows that the codicil was duly signed and published upon the same day as the will. It is also admitted that the sisters of the testator, Mrs. Annie F. Symons and Mrs. Catherine C. Hopkins, predeceased the testator. These two sisters were devised and bequeathed certain portions of testator's real and personal property in items 4 and 5 of the will. The appellants here, complainants in the chancery court, claim to be the owners of those portions of the property devised and bequeathed to Mrs. Symons and Mrs. Hopkins under these two items of the will. They claim that these are lapsed legacies and devises because of the death of these two sisters before that of the testator; that since the testator left no children, the widow inherited under our laws of descent and distribution in fee simple the portions of these lapsed legacies and devises. Some of the complainants also claim a different share of the property under the will, in case the widow did not inherit the lapsed legacies. It is, however, unnecessary to state in full this claim.

The appellees contend that the dominant purpose of the will as shown by its terms was that the wife of testator was to have only a life estate in the property, and that the remainder is therein given to his nieces and nephews and John W. Johnson, all of whom are mentioned in items 4 and 5 of the will qualified by item 2 of the codicil, which gives Johnson an equal share with the representatives of the brothers and sisters mentioned in these items, and that the lapsed legacies of the devises to Mrs. Symons and Mrs. Hopkins, either go under the will to their heirs, or to the nieces and nephews mentioned in these items.    They contend further that the former adjudications of this court have held that these lapsed devises passed under the will and that these portions were not inherited by the widow under our statute of descent and distribution, or, in other words, that this question is *res adjudicata.*

We will first consider the question as to whether or not this court in former considerations of this case has decided this question.

In the first report of the case mentioned above, the question there presented to the court was whether or not under this will the widow, Mrs. Julia A. Neilson, took a life estate in all property, or one in fee.   There the court, after examining the will in full, held that it was the intention of the testator to give his wife a life estate, with remainder to his sisters, nieces and nephews; that by this will he intended to dispose of his entire estate.   In that case the complainants (the present appellants) were claiming the entire estate as heirs at law of the wife.   Their claim was that she was given an estate in fee under the will.   In other words, the sole question decided by the court in that case was that by the terms of the will the wife only received a life estate.   The court in no wise attempted to deal with the two lapsed devises and bequests to these two sisters, but only dealt with the estate devised and bequeathed to the wife under the will.   In this opinion the court *sua sponte* dismissed the bill without prejudice to the right of the appellees there (appellants here) to request that the

cause be remanded for the purpose of having the bill amended, if desired. This request was made, and one of the reasons given therefor was the suggestion that the widow inherited the property devised in the will to these two sisters and that complainants were the heirs at law of the widow. In *Hale* v. *Neilson,* 113 Miss. on page 30, 73 So. on page 865, the motion to remand is sustained and the cause remanded "in order that the bill may be amended generally, and intimate no opinion on the question whether there is a lapsed devise, or as to the rights of the present appellees as between themselves. No such issues were properly presented by the bill as it is now written." In these two opinions the court in no way passed upon this question.

Upon remand the bill was amended to properly present this question. A demurrer was sustained to the bill and the will construed by the chancellor. An appeal was then prosecuted to this court, and the case is reported under the name of *Marx* v. *Hale,* 119 Miss. 410, 81 So. 119. In this opinion it is stated that—"The codicil is not dated, and it may be that the codicil was written after the death of . . . Mrs. Symons and Mrs. Hopkins. The bill does not allege the date or circumstances existing at the time of the writing of the codicil, nor does it allege who are the proper heirs at law of Charles A. Neilson, deceased, if all of the brothers and sisters of said Neilson predeceased him. In the absence of these necessary parties and necessary averments, we think it would be improper to enter upon a definite construction of the will and codicil."

It is then stated that the chancellor was right in sustaining a demurrer to the bill but erred in construing the will. The bill was then dismissed without prejudice to the rights of the parties to file a proper bill making all parties interested parties to the bill.

From a careful consideration of this opinion it will be noted that the court was of the opinion that all necessary parties were not before it for a construction of the will; that the allegations of the bill were too vague and indef-

inite with reference to the time of the execution of the codicil. Nothing was decided except that these allegations were insufficient to maintain the bill. The will was not construed. Therefore, necessarily the court did not consider the material items of the will and of the codicil nor whether or not there were lapsed devises, nor to whom these items went.

The present bill shows that the will and codicil were executed at the same time, and alleges the other facts, and makes all parties to this suit in accordance with the suggestion of the last opinion of the court. This opinion does not decide to whom these items went, either under the will or according to the law of descent and distribution.

Consequently, this question has not been decided by this court in any of these opinions.

It is held in the first opinion in 112 Miss. 291, 72 So. 1011, that the testator in this will intended to devise and bequeath all of his property. This is true, and in this will he did so. But before his death these two sisters had died. In fact, they died several years before he did. Consequently, for many years he knew that these legacies and devises had lapsed, and he made no further provision with reference thereto.

It is contended by counsel for appellee that considering together items 4 and 5 of the will and item 2 of the codicil, these bequests and devises are to a class and not to individuals, and that either those of the class living at the time of the death of the testator take the estate under the will, or the heirs of the devisees dead take their shares. It is not necessary to decide who would take this property under the will if left to a class, or whether or not it would still be property not disposed of by the will, for the reason that these items do not bear this construction, but the devises are expressly to individuals, each individual being named and the exact portion of the estate he is to take. Item 4 and item 5 together expressly give to each of these sisters one-fifth by name, to one niece and one nephew one-fifth, and to the two Covingtons each one-half of one-fifth.

From a consideration of the entire record we know that these nieces and nephews are the children of either brothers or sisters of the testator, and that the share allotted each child was arrived at by what he would have given its father or mother had he substituted parents for children. In other words, Annie Little and Walker Neilson were the only children of their respective parents, while the two Covingtons represented one parent, so that the share of the Covingtons together was equal to the share each of Little and Neilson. This method of arriving at the part he would give each child, however, does not change these from individual bequests to that of a class, because each individual is named and the exact proportion given him is expressed. Item 2 of the codicil merely gives Johnson a share equal to that given each sister, Annie Little, Walker Neilson, and the two Covingtons combined. In other words, it adds another beneficiary to items 4 and 5 of the will who is to take an equal part with these beneficiaries, that part being equal to that given each sister, Annie Little, Walker Neilson, and the combined share given the two Covingtons. It makes these beneficiaries, except the two Covingtons, have one-sixth instead of one-fifth of this property.

A gift to a class is typically illustrated by the case of *Branton* v. *Buckley,* 99 Miss. 116, 54 So. 850, L. R. A. 1917C, 527. It is therein stated that a gift to a class is "a gift to a number of persons not individually named, but all answering a general description." To like effect is the case *Matter of King,* 200 N. Y. 189, 93 N. E. 484, 34 L. R. A. (N. S.) 945, 21 Ann. Cas. 412; 1 Jarman on Wills (6th Ed.), 232; 40 Cyc. 1473.

The converse of this rule is well stated in the case of *Cruse* v. *Howell,* 4 Drew, 217, as follows: "If there is a bequest to certain persons *nominatim,* or so described as to be fixed at the time of the gift so that there can be no fluctuation, then, if one of them dies in the lifetime of the testator, his share lapses."

See, also, 21 Ann. Cas. 415, and note.

It is contended by the appellee that since the wife took a life estate under the will, under section 5088, Code of 1906, section 3376, Hemingway's Code, she did not inherit the property mentioned in these lapsed devises. This section of the Code is as follows:

"Any provision by the will of the husband or wife for the other, shall be construed to be in bar of any share of the real or personal estate of the testator, unless it be otherwise expressed in the will."

Under our statute the widow was the only heir at law of the testator. There were no children. Section 1651, Code of 1906, section 1383, Hemingway's Code, provides that if a husband die intestate and do not leave children nor descendants of children, his widow shall be entitled to his entire estate in fee simple. Section 1654, Code of 1906, section 1386, Hemingway's Code, provides that the estate not devised or bequeathed in the last will and testament shall descend and be distributed in the same manner as the estate of an intestate. In the case of *Morris* v. *Henderson,* 37 Miss. 507, it is held that—"If real estate 'be specifically devised, and the devise does not take effect, either from the incompetency of the devisee to take, from a partial revocation of the will, a lapse by the death of the devisee in the lifetime of the testator, or from the contingency not happening upon which, as a condition precedent the devise was made, or was to take effect, it descends to the heir, as property undisposed of by the will.' "

Under similar statutes relating to the dower of a wife under the Code of 1871, it was contended that when the wife took under the will she did not inherit property of her husband not disposed of in the will. The court construing those sections held that those statutes did not apply to the case of a widow who is the sole heir of her deceased husband. *Wall* v. *Dickens,* 66 Miss. 655, 6 So. 515.

In the case of *Lemon* v. *Rogge* (Miss.), 11 So. 470, the husband gave his wife a life estate but did not dispose of the remainder. As the testator had no children, the court

held that under the statute of descent and distribution she took the remainder as heir at law.

In the case of *Rainey* v. *Rainey,* 124 Miss. 780, 87 So. 128, it is also held that when a wife takes property under the will she also inherits the property not therein disposed of, as heir of her husband.

Since there were no other heirs of the testator, these lapsed devises were inherited by his widow, and this section of the Code in no wise affects this right. Constructions of kindred statutes are found in the two cases of *Cain* v. *Barnwell,* 87 So. 481, and Id., 124 Miss. 860, 87 So. 484.

In conclusion, we wish to repeat that it is perfectly true that the testator meant to devise and bequeath all of the real and personal property of which he was possessed at the time he wrote the will. It is also perfectly plain that these devises were made to individuals, each being given a certain specific and definite proportion of the estate, and that in no sense are these devises or bequests made to classes or to a class; that under the law it is equally plain that where the devisee mentioned in a will predeceased the testator, there is a lapsed devise, and the property under our statute of descent and distribution is inherited by the heir at law, and that in this case the widow is the heir at law and that she inherited under this statute the two-sixths interest in this property devised to Mrs. Symons and Mrs. Hopkins, as section 5088 does not preclude her from inheriting these interests as sole heir at law; that the appellant R. Y. Moore is entitled to one-half of this two-sixths interest inherited by the widow, or a one-sixth interest in this property, and that the other appellants are the owners of the other one-sixth interest.

Reversed, and decree will be entered in this court in favor of the appellants in accordance with this opinion.

*Reversed.*